# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

FAYETTE CAMPBELL, et al.,

    Plaintiff(s),

    vs.

GENERAL MOTORS
CORPORATION, et al.,

    Defendant(s).

]
]
]
]
]
]
]
]
]
]
]

CV 98-N-1542-W

**ENTERED**

SEP   8 1998

## Memorandum of Opinion

### I.   Introduction.

The Court has for consideration plaintiffs' motion to amend their compliant, filed July 13, 1998, and plaintiffs' motion to remand, filed June 30, 1998. In their notice of removal, filed June 15, 1998, the defendants asserted federal jurisdiction in this Court on the alternate grounds of diversity of citizenship, under 28 U.S.C. § 1332, and the existence of a federal question, under 28 U.S.C. § 1331, via the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101-30169. *See Notice of Removal*, ¶¶ 8, 16-18. The crux of the plaintiffs' claims is that the defendants designed and installed defective fuel injector pumps in various models of General Motors automobiles. The named defendants are General Motors Corporation ("GM") and Stanadyne Automotive Corporation ("Stanadyne").[1]

---

[1] Two other defendants were dismissed by order of this court entered July 8, 1998, in response to plaintiffs' stipulation of dismissal filed July 8, 1998. While the legal arguments discussed here were actually advanced in a brief filed by GM alone, this court will attribute them to both defendants throughout because by motion filed August 10, 1998, Stanadyne adopted GM's brief.

Both motions before the court have been briefed and were orally argued on August 31, 1998. They are ripe for decision. The motion to amend will be denied and the motion to remand will be granted.

## II.    The Motion to Amend the Complaint.

On July 13, 1998, the plaintiffs moved for leave to amend the complaint. Such leave "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and this court has no particular objection to the amendment offered here. However, it is a bit troubled by plaintiffs' references to the proposed amended complaint, which still has not been accepted by this court, in arguing the remand issue. The Supreme Court long ago made clear that federal jurisdiction is to be determined based on the facts and pleadings as they existed *at the time of removal* and not later. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S. Ct. 586, 82 L. Ed. 845 (1938); *see Freeport-McMoran, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S. Ct. 858, 860, 112 L. Ed. 2d 951 (1991) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."). Therefore even if this court were to allow the plaintiffs' to amend their complaint, the amended complaint could not be considered in assessing the court's jurisdiction.

Plaintiffs urge that the amended complaint can be considered because it "does not alter plaintiffs' causes of action or the relief sought but is an attempt to clarify any possible confusion inherent in plaintiffs' original complaint." *Memorandum in Support of Plaintiffs' Motion to Remand*, at 1. It is true that some courts have suggested that such "clarifications" do not fall within the *St. Paul* rule, and may be considered in assessing

- 2 -

jurisdiction. *See, e.g., ANPAC v. Dow Quimica de Columbia S.A.*, 988 F.2d 559 (5th Cir. 1993); *Griffin v. Holmes*, 843 F. Supp. 81 (E.D.N.C. 1993). Even if this court were inclined to accept such an approach, however, it would not apply it in this case. The courts following the "clarification" doctrine limit it to situations in which the original pleadings essentially leave the amount in controversy question entirely open. As the discussion below indicates, the claims in the original complaint provide a sufficiently clear basis for this court to assess jurisdiction. Any attempt at "clarification" would provide little benefit, and pose the threat of an impermissible change in the substance of the complaint. Therefore the court will address only the allegations of plaintiffs' original complaint in evaluating the propriety of removal.

Plaintiffs' motion to amend is otherwise proper. However, in light of this court's disposition of the motion to remand, the court feels that the decision to permit or deny an amendment would be better left to the discretion of the state court. The motion to amend will therefore be denied with leave to refile in state court.

**III.   Allegations of the Original Complaint.**

Plaintiffs Fayette Campbell, Cedric Hatter, E.A. Truett, Charles Wilson, Johnny Bishop, John Snider, and Earnest Dew, Jr., purport to bring this action on behalf of themselves and others who own similar General Motors vehicles.[2] They aver that because of allegedly defective electronic fuel injector pumps, the described vehicles may have unpredictable stalling episodes and may be difficult to start, subjecting the plaintiffs to an

---

[2]The plaintiffs claim to speak for and ask the court to certify a class of plaintiffs consisting of "[a]ll adult residents of Alabama who purchased or own a 1994 General Motors vehicle with a diesel engine, engine codes L65, L56 & L49, L57-EFI, L65-CMT, with a [*sic*] electronic diesel fuel injection system." **Complaint at ¶19.**

unreasonable risk of personal injury due to an increased risk of collisions. The plaintiffs

make a number of claims: fraudulent concealment, unjust enrichment, and products

liability. They also request comprehensive injunctive and declaratory relief, including, *inter*

*alia*, a required owner notification campaign to notify putative class members of the alleged

defect, a recall and refit of all affected vehicles, and a declaration of their rights to

notification and cure of the defect. Under the *pretext* of seeking injunctive relief, the

plaintiffs also ask for incidental and compensatory damages.

**IV.    The Motion to Remand.**

### A.    Diversity Jurisdiction and Aggregation.

The plaintiffs admit that there is diversity of citizenship among the parties, but argue

that subject matter jurisdiction is lacking because the amount in controversy does not

exceed seventy-five thousand dollars. 28 U.S.C. § 1332. Where the plaintiffs' claim for

damages is unspecified, "a removing defendant must prove by a preponderance of the

evidence that the amount in controversy more likely than not exceeds the $[75],000

jurisdictional requirement." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th

Cir. 1996); *see also Gafford v. General Elec. Co.*, 997 F.2d 150, 160 (6th Cir. 1993).[3] In the

present case, the plaintiffs make an unspecified demand for compensatory damages and

injunctive relief. They contend that the demand of each plaintiff, named and unnamed,

must be viewed in isolation, disregarding the total amount of the claims, when determining

---

[3]In *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1094 (11th Cir. 1994), the Eleventh Circuit held that
when a plaintiff specifically claims less than $75,000, a removing defendant must prove to a "legal certainty" that
the plaintiff would not recover less than $75,000 if she prevailed.

- 4 -

the amount in controversy for jurisdictional purposes. For the reasons set out below, the court agrees.

Ordinarily, separate and distinct claims of multiple plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement of 28 U.S.C. § 1332. *Snyder v. Harris*, 394 U.S. 332, 335, 89 S. Ct. 1053, 1056, 22 L. Ed. 2d 319 (1969). However, "when several plaintiffs unite to enforce a single . . . right in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." *Pinel v. Pinel*, 240 U.S. 594, 596, 36 S. Ct. 416, 60 L. Ed. 817 (1916); *Snyder*, 994 U.S. at 335, 89 S. Ct. at 1056.

The Eleventh Circuit provided important insight into the scope of the common interest exception to *Snyder's* rule in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996). In *Tapscott*, the plaintiffs filed suit in state court alleging claims on behalf of a putative class for alleged violations of Alabama law arising from the sale of service contracts on automobiles sold and financed in Alabama. *Id.* at 1355. A defendant removed the case to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332, arguing that the claims for punitive damages of the individual defendants should be aggregated to determine whether the jurisdictional amount in controversy was present. *Id.* The plaintiffs then moved to remand claiming, *inter alia*, failure to satisfy § 1332's amount in controversy requirement. *Id.*

In upholding the district court's denial of the plaintiffs' motion to remand, the Eleventh Circuit held that under Tapscott's facts punitive damages may be considered in the aggregate when determining the amount in controversy for jurisdictional purposes. *Id.*

at 1357-59. In so holding, the court examined the nature of punitive damages under Alabama law, *id.*, and then evaluated this remedy based on several factors. The court found that the purpose of punitive damages in Alabama is "to deter wrongful conduct and punish those responsible." *Id.* at 1358 (citing *Reserve Nat'l Ins. Co. v. Crowell*, 614 So. 2d 1005, 1009 (Ala.), *cert. denied*, 114 S. Ct. 84, 126 L. Ed. 2d 52 (1993)). The court also noted that "the state and not the victim is considered the true party plaintiff because punitive damages do not compensate a victim for loss but serve to punish and deter." *Tapscott*, 77 F.3d at 1358 (citing *Maryland Casualty Co. v. Tiffin*, 537 So. 2d 469, 471 (Ala. 1988)). Thus "Alabama punitive damages are awarded for the public benefit - - the collective good." *Id.* Furthermore, the court found that a punitive damages award reflects the egregiousness of the defendant's conduct toward the putative class members as a whole, not just the wrong claimed to have been done to any individual plaintiff. *Tapscott*, 77 F.3d at 1358-59. The court also indicated that "[r]emedies for the benefit of the group" rather than the individual are considered a common interest. *Id.* at 1359 n.14. Group recoveries are recognizable because the defendant must pay over a relatively fixed sum so that the defendant has no interest in how the sum is distributed and "the failure of one class member's claim will increase the others' shares." *Id.* The court held that the plaintiffs had a common and undivided interest in any punitive damages award and allowed aggregation. *Id.* at 1359.

### 1. **Equitable Relief.**

The plaintiffs here claim injunctive and declaratory relief, which defendants claim

should be aggregated under *Tapscott*'s principles. The requested injunctive relief would

require the defendants to:

> (a) . . . finance the recall or retrofitting of all vehicles, including that of
> Plaintiffs, with appropriate electronic fuel pumps to render such vehicles
> reasonably safe in operations; . . . conduct an owner notification to the defect
> [*sic*] and [ ] repair or replace the defective fuel pumps at no cost to the
> owners;

Plaintiffs also request :

> (b) That a judicial determination and declaration be made of the rights of the
> Plaintiffs and the Plaintiffs' class as to Defendants' curing or eliminating
> and/or giving notification or warnings of the fuel injection pump problem
> . . . and such other relief as may be proved appropriate, including such
> incidental and consequential damages as may be proved at trial . . . .

*Complaint* ¶48.

The court is well aware that it considered similar claims for relief in *Earnest v.

General Motors Corp.*, 923 F. Supp. 1469, 1472 (N.D. Ala. 1996) (Nelson, J.). In *Earnest*, this

court held that the "equitable relief sought . . . would benefit the putative class as a whole

and not just any individual plaintiff. As such, each plaintiff has a common interest in the

injunctive and declaratory relief." *Id.* at 1472. Defendants contend that the same result

should apply here.

The court cannot agree. *Earnest* was based on the principle that injunctive relief

can and should be valued based on the defendants' cost of compliance. *See id.* at 1473.

The plaintiffs in *Earnest*, like those here, requested class-wide injunctive relief.[4] This type of relief may force defendants to bear the costly administrative burdens required to manage relief to a large class, like the full-scale notification campaign requested here, or cause significant losses by imposing a ban on future sales like that requested in *Earnest*. However, despite their costs, these sorts of remedies provide benefits to the plaintiff class only in a general sense. No benefits can be traced in any direct and identifiable way to particular plaintiffs. In reality, the principal beneficiary is often not the actual class at all, but the car-buying public as a whole. Broad injunctive relief of this type is directed at remedying the defendants' overall course of conduct, not repairing the harm to individual plaintiffs. The conclusion that a claim for equitable remedies which accrue benefits to the class as a whole or to the public, but not to individual plaintiffs, constitutes a common interest under the principles enunciated in *Tapscott* seemed inescapable in *Earnest*.

The problem is that aggregation is only helpful if the cost of this relief is worth something for amount in controversy purposes. At the time *Earnest* was decided, this question was a relatively open one. This court held that the costs actually felt by the defendant should be taken into account in determining the value of injunctive relief. *Earnest*, 923 F. Supp. at 1473. For better or for worse, the Eleventh Circuit has now made it clear that the defendants' perspective regarding costs of compliance is to be ignored in finding the amount in controversy. Instead, "this circuit has adopted the plaintiff-viewpoint rule" so the value of the object of litigation is measured "solely from the plaintiff's

---

[4] The court notes that the plaintiffs in *Earnest* requested even broader relief, including a public advertising campaign and a permanent injunction forbidding future sales of the allegedly defective part. Such allegations only strengthened the argument for aggregation in *Earnest*, and serve to further distinguish the present case.

perspective." *Ericsson GE Mobile Communications, Inc. v. Motorola Communications &*
*Elecs., Inc.*, 120 F.3d 216, 218-19. "Regardless of the wisdom" of this approach, it now
binds the Eleventh Circuit and this court.[5] *Id.* at 220.

Viewed from the plaintiffs' standpoint, only benefits which have measurable value
to the class members may be considered in calculating the amount in controversy.
Injunctive relief benefitting the general public and the class as a whole, which this court
aggregated in *Earnest* and which formed the linchpin of the analysis in that case, will now
be irrelevant in most cases. Unfortunately for defendants, precisely the same features
which make this kind of relief aggregable also tend to render it worthless under *Ericsson*'s
valuation scheme. By their nature these remedies involve high costs to defendants without
providing direct benefits to any particular plaintiff.[6] While the court can imagine situations
in which class-wide relief might indirectly provide significant economic value to the class
members, and so be both valuable and aggregable, the court suspects this often will not
be true. Generally, the only things that have value from a plaintiff's perspective are the

---

[5] Like the panel in *Ericsson*, this court "recognize[s] that there are persuasive arguments to support" a
valuation scheme that takes the defendants' perspective into account. *Id.* at 220. The purpose of the amount in
controversy requirement is presumably to ensure that defendants are given the expensive additional protection
of federal diversity jurisdiction only in cases that involve high stakes. It is difficult to understand why a case that
might involve hundreds of thousands of dollars of the defendants' money does not qualify simply because the
plaintiffs do not stand to gain very much. *See id.* at 220 n.15 (making a similar point). Moreover, as a practical
matter, the cost of compliance with the desired injunction directly affects the value of the case to the plaintiffs,
because the cost to defendants controls how much they will pay to settle the case.

[6] For example, an expensive class-wide notification campaign has virtually no value to any plaintiff. This
relief does not even spare the plaintiffs the cost of notice to the class. Pre-judgment notice must be provided long
before the defendants are ordered to do anything. Fed. R. Civ. P. 23(c)(2). Although notice of the relief granted
by a final judgment may also be required, *see, e.g.* Fed. R. Civ. P. 23(d)(2), the notice required, and who pays
for it, is determined by the particular circumstances of the case. Plaintiffs might or might not save on these costs
because defendants undertake a notification campaign. In any event, post-judgment notification costs are so
ancillary to the primary relief sought in the case, so discretionary, and so speculative at this early stage of the
litigation, that this court suspects that they cannot even be considered as part of the amount in controversy.

tangible benefits he or she personally receives from the litigation. This court must therefore assess the aggregability of the benefits provided directly to class members, a much different question than the one dealt with in *Earnest.*

After culling out the various aspects of the relief sought that provide little or no value to the plaintiffs, this court finds only two items that the plaintiffs ask for and that have true value to them. To put the matter simply, the plaintiffs want money damages and new fuel pumps. The compensatory damages sought by the plaintiffs are, of course, not aggregable.[7] *See, e.g., Snyder v. Harris*, 394 U.S. 332, 89 S. Ct. 1053, 22 L. Ed. 2d 319 (1969). More importantly, this court can see no meaningful distinction between money damages and in-kind replacement of a defective part. Plaintiffs have essentially asked that defendants fix the claimed problem rather than paying over the money required to fix it. This remedy is provided directly to each individual plaintiff, and is intended to compensate for that plaintiff's discrete harm. As such, it does not represent a common interest under the principles laid out in *Tapscott.*[8] *See Henry v. Homeside Lending, Inc.*, CV-96-N-2445-S (N.D. Ala. Dec. 13, 1996) (Nelson, J.) (reaching a similar conclusion about the equitable

---

[7] While plaintiffs take pains to couch their request for money damages as equitable relief, rather than as a legal remedy, *Complaint* ¶¶3, 48, merely changing the label attached to a remedy cannot alter its affect on this court's jurisdiction.

[8] Judge Blackburn of this court has suggested that injunctive relief should generally be aggregable because, among other reasons, an injunction is granted class-wide so that "to the extent that one plaintiff is entitled to injunctive relief, all plaintiffs are entitled to injunctive relief." *Edge v. Blockbuster Video, Inc.*, 1997 WL 910414, at *6 (N.D. Ala. 1997). This court must respectfully disagree. In most cases, it is impossible to draw a practical distinction between injunctive relief and a class-wide finding of liability for money damages. At least in class actions involving numerous, small, uniform claims, money damages flow essentially as a matter of course from a finding of liability. For example, had plaintiffs here sought and received a class-wide finding that their fuel pumps are defective and asked for money damages instead of replacement, each would almost assuredly receive substantially the same fixed cost of replacing the pump. That money payment clearly could not be aggregated, and this court can not conclude that an in-kind equivalent should be treated differently.

- 10 -

remedy of disgorgement). At least where the injunctive relief sought is essentially the equivalent of money damages, as is the case here, this court holds that such relief cannot be aggregated to meet the jurisdictional minimum. *See Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1050 (3d Cir.), *cert. den. sub nom. Upp. v. Mellon Bank, N.A.*, 510 U.S. 963, 114 S. Ct. 440, 126 L. Ed. 2d 373 (1993) (refusing to aggregate equitable relief where "virtually all the relief sought is remediable by money damages").

Ericsson has brought into clear focus a distinction that was relatively unimportant in *Earnest*. Injunctive relief is an extraordinarily malleable remedy. Its shades and variations serve different purposes. It is not surprising, therefore, that some of these forms are aggregable and some are not. As the Eleventh Circuit has pointed out in a different context, "[c]lass members . . . have common interests in obtaining injunctive relief against future" wrongdoing. *See Holmes v. Continental Can Co.*, 706 F.2d 1144, 1160 (11th Cir. 1983) (discussing discrimination under Title VII). Likewise, they may have a common interest in injunctive relief that forces defendants to shoulder the administrative costs involved in dealing with a large class. Advertising and notification campaigns provide a good example.

However, class-action plaintiffs "also have individual interests in obtaining compensatory relief for past" wrongdoing. *Id.* Plaintiffs may seek compensation via the usual route of money damages. They can also seek injunctive relief designed to achieve essentially the same objective by placing them in the position they would have been in had defendants behaved properly. Evaluation of the aggregability of this type of relief was unnecessary in *Earnest*, because in that case the defendants' costs of compliance with the

- 11 -

class-wide injunctive relief requested were more than enough to satisfy the amount in controversy requirement. However, in this case, and probably in most cases, only the compensatory component of the requested injunctive relief has value under *Ericsson*. Almost by definition, compensatory relief cannot be aggregated under *Tapscott*. It is designed to remedy a discrete harm to an individual plaintiff, and so represents an individual, not a common, interest. Whether couched in legal or equitable terms, compensatory relief is simply not aggregable. The only kinds of relief that have value to the plaintiffs here are compensatory in nature, so aggregation is not appropriate.

For the reasons outlined above, this court finds that the injunctive relief in this case cannot be aggregated. Or, to put the matter another way, the relief that can be aggregated isn't worth anything. *See Crawford v. American Bankers Ins. Co.*, 987 F. Supp. 1408 (M.D. Ala. 1997) (Albritton, J.) (reaching essentially the same conclusion). Because the complaint does not indicate the value of the remedies claimed, the defendants have the burden of proving, by a preponderance of the evidence, that the relief sought exceeds $75,000 per class member. *Tapscott*, 77 F.3d at 1356-57. This court has been presented with no evidence that would lead it to conclude that the money damages and parts replacements sought here would amount to $75,000 in the case of any class member, much less every class member. *See Zahn v. Int'l Paper Co.*, 414 U.S. 291, 94 S. Ct. 505, 38 L. Ed. 2d 511 (1973). Therefore, unless defendants can provide some other grounds justifying jurisdiction, this case must be remanded.

### 2. Unjust Enrichment.

Defendants have raised, principally at oral argument, the contention that plaintiffs' claims for unjust enrichment can be aggregated to meet the jurisdictional minimum. This court disagrees. While it is true that plaintiffs do allege a cause of action based on unjust enrichment, the only remedies sought appear to be the injunctive remedies already discussed. *Complaint* ¶41. These remedies cannot be aggregated, regardless of the cause of action that might underlie them.

Even if the plaintiffs had sought a monetary remedy for unjust enrichment, for example restitution or disgorgement, this court would not be inclined to aggregate it. Absent unusual circumstances, unjust enrichment remedies do not provide a generalized recovery of a fixed fund for the class. Instead, each plaintiff is entitled to the defendants' profits which resulted from the wrongdoing to that particular plaintiff. *See Crawford*, 987 F. Supp. at 1411-1412 (declining to aggregate). While the damages are admittedly based on the defendants' profits, and not the plaintiffs' harm, each recovery is an individual right and constitutes an individual interest. As this court has previously pointed out, "[w]hat is presented here is a series of many individual claims for very small amounts of money." *Homeside, supra*, Mem. Op. at 6-7. Such unjust enrichment claims "cannot, in these circumstances, be aggregated to reach the required jurisdictional amount." *Id.*

### 3. Attorneys' Fees.

Finally, defendants contend that the amount in controversy can be met by aggregating the plaintiffs' claims for attorneys' fees. The plaintiffs seek "a reasonable

attorney's fee for the Plaintiffs and Plaintiffs' class for securing relief that will benefit the general public and a large group of persons." *Complaint* ¶48.

The Court is aware that some non-controlling authority exists holding that attorneys' fees in class actions must be considered in the aggregate and counted against each class member's amount in controversy for purposes of determining whether the $75,000 jurisdictional threshold has been crossed. *See, e.g., Culverson v. General Motors Acceptance Corporation*, CV-96-B-3331-J (N.D. Ala. 1997) (Blackburn, J.). It is upon the reasoning of *Culverson* that the defendant's removal rests, at least in part. *See General Motors Corporation's Objection and Response to Plaintiffs' Motion to Remand*, at 11-12. This court has previously rejected the reasoning in *Culverson* and indicated its conclusion that fees sought under a "common fund" theory are not aggregable. *Davis v. Direct Merchants Credit Bank, N.A.*, CV-98-N-1060-W (N.D. Ala. June 23, 1998) (Nelson, J.). The court continues to adhere to that conclusion here.

Both Alabama and federal courts follow the so-called American Rule, under which the parties are generally responsible for paying their own attorney's fees. *See, e.g., Ex parte Horn*, 1998 WL 32590, at *8-9 (Ala. 1998); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). Courts recognize several exceptions to this rule, however. Under the "common fund" exception, an attorney "whose services on behalf of his client created a fund to which others may also have a claim" is entitled to payment from that fund. *City of Ozark v. Trawick*, 604 So. 2d 360, 364 (Ala. 1992). Payment is typically calculated based on a flat percentage of the fund itself. *See Camden I*, 946 F.2d at 774. The doctrine is designed to spread the costs of the litigation among those who benefitted

by it. *Id.* at 771; *Eagerton v. Williams*, 433 So. 2d 436, 451 (Ala. 1983). The critical feature is that payment is "taken from the plaintiffs' overall recovery, not [imposed] in addition to the actual damages recovered." *In re Citric Acid Antitrust Litig.*, 1996 WL 116827, at *4 (N.D. Cal. 1996).

It is precisely this aspect of common fund recovery which has led this court, along with several other judges in this district, to conclude that attorneys' fees of this type are not aggregable. *See Davis, supra; Horton v. Alliance Mortgage Co.*, CV-98-AR-0581-S (N.D. Ala. Apr. 28, 1998) (Acker, J.); *Patterson v. Time Warner Operations, Inc.*, CV-97-TMP-2915-S (N.D. Ala. March 31, 1998) (Putnam, J.). As Magistrate Judge Putnam has pointed out,

> Unlike an attorneys' fee awarded to a party and payable by the other party under a fee-shifting statute or contract provision, a fee taken from the common-fund of the class recovery is not a separate and distinct form of relief comparable to punitive or compensatory damages, or even an injunction. Once the common fund of the class recovery is established from compensatory and, perhaps, punitive damages, class counsel's fee is *deducted* from it. It is the plaintiff class, not the defendant, that pays the common-fund attorneys' fee. Because the defendant does not pay the fee, it is not a part of the "controversy" between the parties, any more so than the contingency fees collected by counsel in individual tort cases.
>
> . . . Whether the common-fund of damages obtained by the plaintiffs will be reduced to pay their attorneys has no impact whatsoever on the defendant. Paraphrasing *Tapscott*, it is true the defendant is disinterested in the distribution of the fee, but only because it is not having to pay it.

*Patterson*, Mem. Op. and Order at 12-15 (emphasis in original) (footnotes omitted) (quoted in *Horton*, Mem. Op. at 4-6). Common fund fees are thus irrelevant is determining the amount in controversy, because they are not paid by an adverse party. *See Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 54 S. Ct. 133, 78 L. Ed. 267 (1933).

However, after reviewing the allegations in the complaint, the court is not entirely convinced that plaintiffs are asking for common fund fees. Instead, their complaint seeks fees "for securing relief which will *benefit the general public and a large group of persons*." *Complaint* ¶48. This language seems to refer not to the common fund doctrine, but to its cousin, the common benefit doctrine. This equitable doctrine constitutes another exception to the American Rule, and allows a court to award attorneys' fees "when the efforts of the plaintiff's attorneys render a public service or result in a benefit to the general public in addition to serving the interests of the plaintiff." *Horn*, 1998 WL 32590, at *8-9; *see also Polonski v. Trump Taj Mahal Associates*, 137 F.3d 139, 145 (3d Cir. 1998)(applies when litigants "confer a common benefit upon a class of individuals *not participating in the litigation*") (emphasis added). The key difference is that no common fund need be created. In fact, fees can be awarded where the benefit bestowed is non-pecuniary, *see Bell v. Birmingham News Co.*, 576 So. 2d 669, 670 (Ala. Civ. App. 1991); *Barton v. Drummond Co.*, 636 F.2d 978 (5th Cir. Unit B 1981), and the Alabama Supreme Court has awarded fees in several cases where there was no monetary recovery at all. *See, e.g., Brown v. State*, 565 So. 2d 585, 591-92 (Ala. 1990). Fees are typically assessed directly against the defendant. *See, e.g., id.*; *Barton*, 636 F.2d at 985. While the precise contours of common benefit recovery are far from clear, *see Polonski*, 137 F.3d at 146, plaintiffs have sought relief which may benefit the public at large, and so might be entitled to a payment of fees *by the defendants* based on the common benefit theory.[9]

---

[9]Whether plaintiffs would prevail on this claim is something of an open question. Generally, federal courts have carefully hemmed in the common benefit doctrine, applying it only where the fees, though paid for by the defendant, are somehow distributed over those *benefitted* by the plaintiffs' actions. *See Polonski*, 137 F.3d at

The presence of common benefit, rather than common fund, fees in a case might well change the complexion of the aggregation question considerably. Common benefit fees could well be viewed as a common interest. By their very nature, such fees are not awarded as a separate recovery for each class member but instead are provided for the public benefit, to support the entire collective enterprise of the litigation. Moreover, they are paid directly to the class's attorneys. No payout to separate class members is ever made. Like statutory fees, which several courts have held can be aggregated, common benefit fees shift the cost of bringing the action onto the wrongdoer and so may be aggregable under *Tapscott. See Howard v. Globe Life Ins. Co.*, 973 F. Supp. 1412, 1420 (N.D. Fla. 1996) (aggregating statutory fees).

However, defendants, who bear the burden of proof on the amount in controversy issue, failed to mention the common benefit theory until oral argument. Defendants have not convinced this court that a common benefit recovery would be possible under the circumstances of this case. They have certainly not provided sufficient evidence to allow this court to assess the possible value of a recovery under this amorphous, equitable doctrine. *See In re Citric Acid Antitrust Litig.*, 1996 WL 116827, at *4 ("[T]he Court finds it wholly speculative to assume that the mere fact that additional . . . fees could be recovered when 'equities justify it' demonstrates that the jurisdictional threshold is

---

145; *see, e.g., Hall v. Cole*, 412 U.S. 1, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973) (fees assessed against union defendant where union's members benefitted); *Barton*, 636 F.2d at 985 (fees assessed against corporate defendant where stockholders benefitted). While the Alabama courts have so far applied the doctrine principally against government entities, for which the same principle would apply, *see, e.g., Horn, supra; Brown, supra; Bell, supra*, the court has never said so explicitly. Though this court would be inclined to interpret the state court opinions in this way, the result is far from clear.

satisfied."). Assuming these fees could be recovered and could be aggregated, this court cannot even guess at how much money would be involved. Therefore, at least in this case, the court must ignore any possible award of common benefit fees. Jurisdiction cannot be based on the aggregation of attorneys' fees.

Defendants have failed to establish that the plaintiffs meet the $75,000 amount in controversy requirement. Accordingly, the Court concludes that no diversity jurisdiction exists.

**B.    Federal Question Jurisdiction Arising Under the National Traffic and Motor Vehicle Safety Act.**

The defendant alternatively contends that this action arises under the National Traffic and Motor Vehicle Safety Act ("MVSA"), 49 U.S.C. §§ 30101–30169, thereby creating federal question jurisdiction. *See General Motors Corporation's Objection and Response to Plaintiffs' Motion to Remand*, at 13-15. The MVSA provides, in part, that "[t]he Secretary of Transportation shall prescribe motor vehicle safety standards." 49 U.S.C. § 30111(b). The Act further provides for civil penalties for violating these standards, to be assessed in a suit by the United States Government, 49 U.S.C. § 30121, 30165, and gives the Secretary of Transportation the power to order notification, recall, and replacement of defective or non-compliant vehicles or equipment. *Id.* § 30118-30120. The Act also provides that "[w]hen a motor vehicle safety standard is in effect under this chapter, a State . . . may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle . . . only if the standard is identical to the standard prescribed under this chapter." 49 U.S.C. § 30103(b). This preemption provision is modified by a savings clause,

which indicates that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." *Id.* § 30103(e).

Defendants essentially argue that the recall remedy sought by plaintiffs is available only through the federal government via the MVSA, so that this case necessarily involves a federal question which gives this court jurisdiction. *See General Motors Corporation's Objection and Response to Plaintiffs' Motion to Remand*, at 114-15. This argument is unpersuasive for several reasons.

Any assessment of federal question jurisdiction must begin with the principle that the plaintiff "is master to decide what law he will rely upon," *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S. Ct. 410, 411, 57 L Ed. 716 (1913), and thus has the prerogative to rely on state law alone, although both state and federal law may give him a cause of action. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* For this reason, a case ordinarily cannot be "removed on the basis of a federal defense, including . . . preemption." *Caterpillar*, 482 U.S. at 393, 107 S. Ct. at 2430, 96 L. Ed. 2d. at 318. The claims in plaintiffs' complaint sound only in state law, so regardless of their possible preemption by the MVSA, application of the well-pleaded complaint rule would lead to a finding that federal jurisdiction is improper.

To remain before this court, defendants must fit this case within an exception to the well-pleaded complaint rule. While that rule governs most cases, so that in the words of

Justice Holmes "'[a] suit arises under the law that creates the cause of action'" in the vast majority of cases, *see Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8-9, 103 S. Ct. 2841, 2846, 77 L. Ed. 2d 420 (1983) (quoting *American Well Works v. Lane & Bowler Co.*, 241 U.S. 257, 260, 36 S. Ct. 585, 586, 60 L. Ed. 987 (1916)), federal courts have long recognized that there are some circumstances in which federal jurisdiction should reach beyond purely federal causes of action, because federal laws and federal interests are heavily intertwined with a state law claim. *See id.; see also Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 & n.12, 106 S. Ct. 3229, 3235 & n.12, 92 L. Ed. 2d 650 (1986) (discussing the practical assessment of federal interests required in analyzing these situations). Thus courts have recognized as "an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.*, 463 U.S. at 22, 103 S. Ct. at 2853. For similar reasons, a state law claim might "'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 12, 103 S. Ct. at 2848.

Defendants have referred to both of these observations from *Franchise Tax Board* in urging this court to retain jurisdiction of the plaintiffs' claims. They repeatedly claim that under these principles federal jurisdiction should apply because there is no viable state cause of action and only the federal government can order the relief the plaintiffs seek. Therefore, according to defendants, federal questions are "'essential'" and "decisive'" in assessing plaintiffs' rights. *General Motors Corporation's Objection and Response to*

*Plaintiffs' Motion to Remand,* at 14. However, *Franchise Tax Board* did not create "some kind of automatic test" which could be easily applied based on the plain language quoted by defendants. *Merrell Dow,* 478 U.S. at 814, 106 S. Ct. at 3235. Instead, "*Franchise Tax Board* candidly recognized the need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction." *Id.* The Supreme Court has crafted specific and carefully limited exceptions to give form to the general principles expressed in *Franchise Tax Board.* It is these specific exceptions, and not a freewheeling inquiry based on the Supreme Court's broad language, which must concern this court here.

The general language of defendants' brief seems to invoke a number of exceptions. Therefore the court must sort through all of them to reach a final ruling on the question of federal jurisdiction.

### 1. Complete Preemption.

The "complete preemption" corollary[10] to the well-pleaded complaint rule flows from the principle that "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.,* 463 U.S. at 22, 103 S. Ct. at 2853. "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Rivet v. Regions Bank,* 118 S. Ct. 921, 925 (1998). This doctrine "allows removal where federal law completely preempts a plaintiff's state-law claim," *id.,* on the theory that when

---

[10]This doctrine is variously known as the "complete preemption" or "super preemption" exception to the well-pleaded complaint rule, *see, e.g., Kemp v. International Business Machines Corp.,* 109 F.3d 708, 712 (11th Cir. 1997), or "super-duper" preemption, as Judge Acker has referred to it in the ERISA arena. *See, e.g., Anderson v. Metropolitan Life Insurance Co.,* No. 96-AR-2703-S, 1997 WL 115863, at *1 (N.D. Ala. Jan. 3, 1997).

the "preemptive force" of federal law is "so powerful as to displace entirely any state cause of action," any claim is in reality "purely a creature of federal law." *Franchise Tax Bd.*, 463 U.S. at 23-24, 103 S. Ct. at 2853-54. A federal statute with this "extraordinary preemptive power" "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S. Ct. 1542, 1547, 95 L. Ed. 2d 55 (1987); *see also Rivet*, 118 S. Ct. at 926 (in these situations, federal law "transform[s] the plaintiff's state-law claims into federal claims").

The Supreme Court has warned that the "extraordinary" but necessary finding of complete preemption should not be made lightly. *Metropolitan Life Ins.*, 481 U.S. at 65, 107 S. Ct. at 1547; *see* 481 U.S. at 67-68, 107 S. Ct. at 1548 (Brennan, J., concurring); *see also Carpenter v. Wichita Falls Indep. School* Dist., 44 F.3d 362, 367 (5th Cir. 1995) ("Absent such extraordinary circumstances, the well-pleaded complaint rule governs."). To date, the Supreme Court has recognized complete preemption in only three limited areas. *Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998). While no precise test for complete preemption has ever been formulated, the analysis contained in several Supreme Court opinions provides useful guidance.

First, the Court has made clear that "the touchstone of the . . . court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress." *Metropolitan Life Ins.*, 481 U.S. at 66, 107 S. Ct. at 1548; *see* 481 U.S. at 67-68, 107 S. Ct. at 1548 (Brennan, J., concurring) ("In future cases . . . the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to

remand . . . ."). In *Metropolitan Life Insurance*, for example, the Court found the requisite intent for complete preemption by ERISA in a statutory provision giving federal courts broad jurisdiction over ERISA disputes, coupled with legislative history which indicated that Congress may have intended that the complete preemption doctrine would apply. *Metropolitan Life Ins.*, 481 U.S. at 65, 107 S. Ct. at 1547. In fact, the Court indicated that it would be "reluctant" to find the "extraordinary preemptive power" required without at least a broad jurisdictional statute like that contained in ERISA. This key ERISA provision contained language "closely parallel" to the other principal statute creating complete preemption, § 301 of the Labor Management Relations Act, thereby creating a "presumption" that the same complete preemption treatment should apply. *Id.; see Aaron v. National Fire Ins. Co.*, 876 F.2d 1157, 1165 (5th Cir. 1989) (this type of provision is the "something more" which turns an ordinary preemptive statute into a completely preemptive statute).

Second, the statute must preempt the state law claims. Indeed, it must have "preemptive force . . . so powerful as to displace entirely any state cause of action." *Franchise Tax Bd.*, 463 U.S. at 23-24, 103 S. Ct. at 2853-54. Thus, the Court has held that, even when § 301 of the LMRA may be implicated, complete preemption does not apply to state law claims which arguably fall outside the preemptive scope of the statute. *Caterpillar*, 482 U.S. at 396, 107 S. Ct. at 2431. According to the Court, claims based on independent employment contracts are not completely preempted by LMRA because they are not "inevitably superseded" by collective bargaining agreements and federal law, *id.*, even though defendants might ultimately prove that the particular claims involved are

preempted. *Caterpillar*, 482 U.S. at 398, 107 S. Ct. at 2432. Complete preemption thus applies only when preemption is in fact complete - and when plaintiffs' claims fall squarely within the completely preempted zone. *See Franchise Tax Bd.*, 463 U.S. at 24, 103 S. Ct. at 2854 (action arises under federal law when that law "completely preempts a state cause of action" and the plaintiffs' "complaint . . . comes within [its] scope").

Finally, the federal statute must do more than preempt. It must provide federal civil enforcement provisions which can "displace" the state claims. *Metropolitan Life Ins.*, 481 U.S. at 60, 107 S. Ct. at 1542. As noted above, the entire concept of federal jurisdiction over completely preempted state law claims is based on the idea that the state claim is "converted" into a federal claim over which the court can then exercise jurisdiction. Although it is true that the claim in a particular case need not be valid under applicable federal law, there must be some federal cause of action granting "'jurisdiction over the parties and the subject matter.'" *Caterpillar*, 482 U.S. at 391 n.4, 107 S. Ct. at 2429 n.4 (quoting *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 561, 88 S. Ct. 1235, 1237-38, 20 L. Ed. 2d 126 (1968)). If no cause of action exists at all there is no federal law for the claim to "arise under." *Franchise Tax Bd.*, 463 U.S. at 24, 103 S. Ct. at 2854. Thus in *Franchise Tax Board* the Court found that ERISA did not completely preempt state law claims which fell outside the scope of ERISA's civil enforcement provisions. While ERISA might have preempted these claims, it provided no "alternative cause of action" giving federal jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 24-27, 103 S. Ct. at 2854-55.

The MVSA fails each and every one of these tests. The statute contains no hints that Congress intended it to completely preempt state law, and no broad provisions granting federal court jurisdiction over vehicle safety issues. On the contrary, the legislative history indicates that Congress intended to keep state claims and state forums open to plaintiffs. *See Amrhein v. Quaker Oats Co.,* 752 F. Supp. 894, 896 (E.D. Mo. 1990) (reviewing legislative history). Congress expressed this intent in the text of the statute itself, which provides that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." 49 U.S.C. § 30103(e); *see Marcus*, 138 F.2d at 54 (finding that the Federal Communications Act did not completely preempt in part based on a similar savings clause). The Supreme Court, in fact, has suggested that the MVSA was not "intended to centralize all authority over the regulated area in one decision-maker: the Federal Government." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 286, 115 S. Ct. 1483, 1487, 131 L . Ed. 2d 385 (1995) (distinguishing another case). There is simply no evidence of congressional intent, express or implied, to make state law claims based on insurance premiums removable to federal court.

It is far from clear that the claims at issue in this case are preempted at all. While the exact scope of MVSA preemption is the subject of some debate, most courts agree that common law claims are protected from express preemption by the presence of the savings clause.[11] *See, e.g., Irving v. Mazda Motor Corp.*, 136 F.3d 764, 768 (11th Cir. 1998); *Perry*

---

[11]Plaintiffs' fraud claims are actually based on Alabama statutory law. However, because these statutes essentially codify the common law, they may well be covered by the MVSA's savings clause and not expressly preempted. Even if they are preempted, plaintiffs' remaining true common law claims are enough to prevent complete preemption.

*v. Mercedes Benz*, 957 F.2d 1257, 1264 (5th Cir. 1992); *Hyundai Motor Co. v. Alvarado*, 1998 WL 288768 (Tex. June 5, 1998). Some courts hold that common law claims will almost never be preempted. See *Hyundai Motor,* 1998 WL 288768 at *9-11 (no conflict preemption because MVSA standards are merely minimum standards). Others will find preemption where state law completely forecloses an option expressly allowed by the federal regulations. *See, e.g., Taylor,* 136 F.3d at 768-769; *Cooper v. General Motors Corp.,* 702 So. 2d 428, 434, 436 (Miss. 1997). Even these courts, however, may allow state claims for negligently implementing a federally-approved choice. *See, e.g., Perry,* 957 F.2d at 1264-65. What is crystal clear is that there is no MVSA preemption, express or implied, in the absence of a specific federal standard dealing with the subject at issue. *Freightliner Corp.,* 514 U.S. at 286, 289-90, 115 S. Ct. at 1487-88.[12] Thus the MVSA sets up a web of very thin strands of preemption, applying only when a federal regulation is present and conflicts with the state law. This is far from the broad and "complete" preemption required to create federal jurisdiction. The court notes that the defendants' argument that state law does not provide the remedy plaintiffs request is completely irrelevant to this inquiry. The question is not whether state legislators and courts have in fact chosen to provide a particular cause of action. The question is whether the MVSA has removed their power to choose.

Finally, as a case cited by defendants themselves illustrates, the MVSA provides absolutely no private right of action for consumers. *Lampley v. Bridgestone Firestone,*

---

[12]Defendants have cited no substantive federal regulations governing electronic fuel pumps or fuel injection systems. Defendants do refer to regulations governing recall and retrofit, but it is far from clear that regulations governing remedies are "applicable to the same aspect of performance of a motor vehicle" as state fraud and products liability law and so can preempt it. *See* 49 U.S.C. § 30103(e). This is a question best left to determination by the state court.

*Inc.,* CV-90-A-907-N (M.D. Ala. 1992) (Albritton, J.); *see* 49 U.S.C. § 30121, 30163-65. Instead, the National Highway Transportation Safety Administration controls the exclusive remedies under the Act, *see* 49 U.S.C. § 30121, 30163-65, and is the "only entity that can order a recall or retrofit." *General Motors Corporation's Objection and Response to Plaintiffs' Motion to Remand,* at 15. Nothing in the Act gives this court jurisdiction over private parties to a civil suit, or over the subject matter of vehicle safety claims. It is therefore clear that Congress never intended these types of disputes to be removable to federal court. In the absence of some expression of congressional intent, this Court cannot reach the conclusion that the MVSA completely preempts state law. As the Eastern District of Missouri summed up its assessment of the same question, "[t]he answer is simply no." *Amrhein,* 752 F. Supp. at 896.

The Court wishes to make clear, however, that it does not hold that Mr. Campbell's state law claims are *not* pre-empted by the MVSA. It merely holds that there is not such "complete preemption" as would support removal to federal court. After remand, the state court may still independently conclude that the Act pre-empts the plaintiffs' state law claims, *see Glasser v. Amalgamated Workers Union Local 88,* 806 F.2d 1539, 1540 (11th Cir. 1986) (per curiam); *Soley v. First Nat'l Bank of Commerce,* 923 F.2d 406, 408-09 (5th Cir. 1991); *see also Franchise Tax Bd.,* 463 U.S. at 12-14 & n.12, 103 S. Ct. at 2848 & n.12 (where federal court lacks removal jurisdiction, state court should determine whether preemption defense has merit), though the Court views such a finding as doubtful in light of its analysis *supra.*

## 2.    State Claims Importing Federal Standards.

As discussed above, federal jurisdiction may be proper over state law claims if the adjudication of those claims necessarily "requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 12, 103 S. Ct. at 2848. A number of courts have held that this occurs when a state law incorporates an applicable federal law as the standard for liability. *See, e.g., West 14th St. Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188 (2d Cir. 1987); *Jairath v. Dyer*, 961 F. Supp. 277 (N.D. Ga. 1996). *But see* 13B Charles Alan Wright, et. al., *Federal Practice and Procedure* § 3563, at 54 (2d ed. 1984) ("the sounder view . . . would find jurisdiction only when federal law is applicable by its own force"). The MVSA could raise such an issue because a violation of the MVSA is considered evidence of negligence per se under Alabama law. *Lowe v. General Motors Corp.*, 624 F.2d 1373, 1380 (5th Cir. 1980).

However, even assuming that valid jurisdiction exists over state law claims which import federal standards, the court is doubtful that such a rule would apply here. The plaintiffs' complaint in no way refers to the MVSA and so does not raise a federal issue directly. Additionally, there appears to be no incentive for the plaintiffs to import a federal standard for use in their claims. While the remedies requested may be unavailable under state law, as defendants claim, nothing indicates that supplementing state law with the MVSA would solve this problem. In fact, as far as this court can tell no relevant standard exists under the MVSA.

A further barrier stands in the way of federal jurisdiction over this case. The Supreme Court has specifically held that, whatever the general validity of jurisdiction over

state claims based on federal law, such jurisdiction is *never* proper where the federal statute involved provides no private cause of action. *Merrell Dow*, 478 U.S. at 814, 106 S. Ct. at 3235. In such a case, "the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Merrell Dow*, 478 U.S. at 817, 106 S. Ct. at 3237. As noted above, the MVSA provides no private civil remedies at all. Thus this court must conclude that even if the plaintiffs' state law claims were based on violations of the MVSA, no federal question jurisdiction would exist. *See Coardes v. Chrysler Corp.*, 785 F. Supp. 480 (D. Del. 1992) (reaching the same conclusion).

### 3.    Artful Pleading.

Admittedly, some special cases do not fall neatly into the exceptions described above. In these cases, for one reason or another, a federal question may be necessarily involved but hidden by the plaintiffs' careful reliance on state claims in the complaint. "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion," the court may take jurisdiction over the federal question. *Rivet v. Regions Bank*, 118 S. Ct. 921, 925 (1998). This "artful pleading" doctrine represents "another corollary" to the well-pleaded complaint rule.[13] *Marcus*, 138 F.3d at 55. While defendants do not mention this doctrine by name, their claim that removal is proper because the remedy plaintiffs claim is not available under state law seems directed at this idea.

---

[13] Both of the two specific exceptions already discussed have at times also been referred to under the colorful "artful pleading" terminology.

As this court has already noted, it is suspicious of generalized principles in the area of federal question jurisdiction because of the careful and restrained approach the Supreme Court has taken to these cases. As Chief Judge Posner of the Seventh Circuit has noted, "[t]he problem comes in setting limits to the doctrine." *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 611 (7th Cir. 1997). In this court's view, the artful pleading approach is applicable only where there are specialized federal interests at stake which make jurisdiction appropriate. *See Carpenter,* 44 F.3d at 367 n.3 (doctrine should apply only in "'exceptional circumstances'"); *see also Four Way Plant Farm, Inc. v. NCCI,* 894 F. Supp. 1538, 1543 (M.D. Ala. 1995) (Albritton, J.) (artful pleading covers only two specialized exceptions, one of which is complete preemption). Thus, for example, one court found federal jurisdiction over a state law warranty claim based not on an ordinary contract but on a federal communications tariff, which itself had the force of federal law. *Marcus,* 138 F.3d at 55-56. While the result in *Marcus* may not technically be labeled "complete preemption," the idea is similar and the importance of the federal question clear. Federal jurisdiction based on the artful pleading doctrine does not and should not extend beyond specialized situations of this type, which respond to the same principles as those involved in the complete preemption arena.

Regardless of the precise standard used to govern the artful pleading doctrine, the court is quite confident that the defendants' arguments here fall far short of the mark. Defendants' argument is essentially that federal questions are necessarily involved in this case because plaintiffs do not have a valid state claim for the remedy they seek. Of course, if this were the test, defendants could remove any state law case they felt did not have

merit as long as an alternative federal action might be viable.[14] An exception of this type would swallow the well-pleaded complaint rule. The very foundation of that rule is that plaintiffs are entitled to choose, for better or for worse, to rely only on state claims. *Marcus*, 138 F.3d at 52. "'[I]f by doing so plaintiff cannot avail himself of a remedy arguably available under federal law, then so be it.'" *Anziulewicz v. Bluefield Community Hosp., Inc.,* 531 F. Supp. 49 (S.D. W. Va. 1981). Whether or not the plaintiffs, having made this choice, are entitled to prevail under state law is a matter which state courts are supremely qualified to resolve.

This court therefore concludes that no federal question jurisdiction is present in this case. As noted above, diversity jurisdiction is not present either. Accordingly, the plaintiffs' motion to remand will be granted and this cause will be remanded to the Circuit Court of Sumter County, Alabama, from whence it was improvidently removed. Costs of removal will be taxed against the removing defendants and in favor of the plaintiffs.

Done, this _6th_ of September, 1998.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

---

[14]Defendants' argument in this case is weaker still because plaintiffs apparently have no viable cause of action under federal law. It is hard to see what federal issue the plaintiffs have structured their pleadings to hide if a federal suit in federal court would not provide them a remedy.